George Wayne Reid,                    )     Civil Action No. 5:16-cv-03280-RMG-KDW
                                       )
                    Petitioner,        )
                                       )
          vs.                          )     REPORT AND RECOMMENDATION
                                       )
Warden Mansukhani, F.C.I Estill,       )
                                       )
                    Respondent.        )
_____)

     Petitioner George Wayne Reid ("Petitioner"), a federal prisoner, filed this pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Motion to Dismiss

or alternatively a Motion for Summary Judgment on December 16, 2016. ECF No. 12.[1] Pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the

summary judgment and summary dismissal procedures and the possible consequences if he

failed to respond adequately to Respondent's Motion. ECF No. 13. Petitioner filed a Response in

Opposition to Respondent's Motion on January 25, 2017. ECF No. 18. This matter is before the

court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC, for a

Report and Recommendation. Having carefully considered the parties' submissions and the

record in this case, the undersigned recommends that Respondent's Motion, ECF No. 12, be

granted.

     I.     Factual and Procedural Background

     Petitioner is currently confined at the Federal Correctional Institution (FCI) in Estill,

South Carolina where he is serving a 45-month term of imprisonment, with a three-year term of

supervision for a federal firearm-possession conviction. ECF No. 11-4. Petitioner is also serving

_____

[1] On April 6, 2017, Respondent filed additional attachments, *see* ECF No. 26, to the pending
Motion in compliance with the undersigned's instruction, *see* ECF No. 23.

a 24-month term of imprisonment, with a one-year term of supervision for a possession of marijuana conviction. *Id.* On March 31, 2011, Petitioner's supervision term began. *Id.* at 5-6. However, on March 24, 2014, the district court revoked Petitioner's supervised release based on a charge of conspiracy to possess with intent to distribute and distribution of heroine. *Id.* at 2. For this heroine conviction, Petitioner was sentenced to 24-month imprisonment. *Id.* Petitioner's projected release date is July 9, 2020, which includes good time credits earned. *Id.* at 1. Petitioner filed the instant action challenging the execution of his federal sentence and requests he be re-credited with 41 days of "gain time." ECF No. 1 at 9.

In the Memorandum of Law attached to his Petition, Petitioner represents that on May 5, 2015, the 1B Upper Officer conducted a random search of cell 304.[2] ECF No. 1-1 at 2. The Officer found "$196.00 in dollar stamps and a pill bottle filled with several different types of pills [] located in a grey beanie hat inside a laundry bag. . ." *Id.* The pill bottle and the stamps were confiscated upon SIS Tech W. McLean's arrival to the Unit, and Petitioner admitted that the pills belonged to him. *Id.* Petitioner alleges that the pharmacist identified the pills as: "1.) 3 tablets of Trazodone, 100MG. 2.) 5 tablets of Fiber Lax. 3.) 6 tablets of Buspirone 10MG. 4.) 1 capsule of Carbamazephone ER 200MG. 5.) 1 tablet of Mirtazapine 45MG." *Id.* Petitioner further represents that "[t]here allegedly were several other pills and a white powder that could not be easily identified by the pharmacist within the pill bottle." *Id.*

Petitioner represents that on May 7, 2015, he received an Incident Report for allegedly violating Code 113—possession of any drugs and/or drug paraphernalia; and for violating code 305—possession of anything not authorized. *Id.* Consequently, Petitioner alleges that he was then placed in segregated housing pending a Disciplinary Hearing. *Id.* Petitioner represents that

---

[2] The undersigned notes that Petitioner's allegations stem from an incident that occurred at FCI Williamsburg, not FCI Estill, where Petitioner in currently housed. ECF No. 1-1 at 2.

on May 7, 2015, the Disciplinary Hearing was conducted. *Id.* Petitioner attended the hearing, did not request "Staff Representation," admitted the charges, and presented no witnesses. *Id.* Additionally, Petitioner represents that he made no statement during the hearing. *Id.*

According to his Petition, the Disciplinary Hearing Officer ("DHO") found Petitioner guilty of Code 113 and dropped the Code 305 infraction. *Id.* at 3. The DHO imposed the following sanctions: "(1) 30 days disciplinary segregation, (2) discontinue 41 days GCT, and (3) 6 months no commissary." *Id.* Petitioner alleges that the DHO "indicated that he delivered his Report to Petitioner on June 4, 2015, [but] [t]his fact is disputed." *Id.* Rather, "Petitioner strongly avers that said Report was never delivered to him [even] after repeated attempts to obtain the [DHO's] Report, [and] the BOP has advised Petitioner that said document cannot be found." *Id.*

In his first habeas Ground Petitioner maintains his due process rights were violated because he never received a written explanation of the evidence relied on and reason for disciplinary action. *Id.* at 5. Specifically, he alleges neither the DHO nor any other employee ever delivered the DHO's report to him. *Id.* Further, Petitioner "contends that the medications in his possession were prescribed to him at one point and the confiscation expiration date had not yet expired." *Id.* Additionally, Petitioner maintains that "since Petitioner is not in a position to dispute the DHO findings and conclusions, he cannot challenge the pharmacists visual identification of the pills . . . and [] there is nothing in any report that indicates that the pulls were ever field tested or laboratory tested nor identified using the BOP approved Narcotics Identification Kit (NIK) test kit." *Id.* Also concerning the pill possession, Petitioner states "there is nothing in the record indicating that the pharmacist submitted a affidavit or memorandum attesting under the penalties of perjury, i.e., 28 U.S.C. § 1746, that Petitioner was not prescribed these pills." *Id.* at 6.

In his second habeas Ground, Petitioner maintains "the BOP's failure to field test submit the pills for laboratory testing testing (sic) and give Petitioner a written explanation of the evidence replied on and reasons for the sanctions imposed violated Petitioner's right to equal protection" *Id.* Petitioner alleges that "[s]imilar inmates at FCI Williamsburg Correctional Institution who have received Incident Reports for Code 113 infractions have always had the substances or pills either field tested or laboratory tested prior to the Incident Report being written." *Id.* at 7. Petitioner alleges that he was treated differently than other inmates because there was no testing of the pills. *Id.*

II.    Discussion

The court will consider Respondent's Motion, ECF No. 11, as a Motion for Summary Judgment. Respondent moves pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. ECF No. 11 at 1. However, this court most certainly has subject matter jurisdiction over this matter, therefore a motion to dismiss pursuant to 12(b)(1) is not viable.[3] Additionally, Respondent's Motion is based primarily on information not included in the Petition. *See* ECF No. 11-1 and attachments. Therefore, in analyzing this Petition, the undersigned will look beyond the pleadings. Accordingly, Respondent's 12(b)(6) Motion should be treated as a Motion for Summary Judgment. *See e.g., George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980) ("If it is necessary for the court to look beyond the pleadings, the 12(b)(6) motion must be converted into a motion for summary judgment. . . ."); *Smith v. Blackledge*, 451 F.2d 1201, 1202 (4th Cir. 1971) ("Since the motion to dismiss was supported by facts outside the pleading, it should have been treated as a motion for summary judgment."). Therefore, the

---

[3] Additionally, the undersigned notes that Respondent concedes that the court has jurisdiction in his Motion. *See* ECF No. 11 at 3.

undersigned will consider the Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

A.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.      Habeas Corpus Standard of Review

A federal prisoner may seek habeas relief either through 28 U.S.C. § 2241. Here, Petitioner asks the court to "reinstate the 41 days loss of gain time" because he claims his "procedural rights were violated when the BOP failed to initially test the pills," *see* Ground One, and because "the BOP failed to field test the pills or submit for laboratory testing," which violated his equal protection rights, *see* Ground Two. ECF No. 1 at 8-9. Habeas corpus is the appropriate mechanism for a federal prisoner to challenge the duration of his confinement, which includes the loss of good time credits. *Foster v. Rivera*, No. 9:07-0576-HMH-GCK, 2007 WL 3002330, at *5 (D.S.C. Oct. 10, 2007) ("Federal habeas corpus jurisdiction is available under 28 U.S.C. § 2241(c)(1) to prisoners who complain of disciplinary proceedings and resulting punishment or loss of privileges without procedural due process."). A federal prisoner must use the BOP's Administrative Remedy Program prior to initiating a civil action. *See* 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). Here, Respondent contests Petitioner's position that he has exhausted his administrative remedies and further represents that he was not denied due process. ECF No. 11.

C.      Analysis

1.      Exhaustion of Administrative Remedies

Respondent contends that summary judgment should be granted because Petitioner failed to exhaust his administrative remedies concerning his due-process claim. ECF No. 11 at 4-10. Specifically, Respondent argues that Petitioner failed to *properly* avail himself of the BOP

Administrative Remedy Program, and he is now time-barred from presenting these issues in new administrative remedies. *Id.* (emphasis added). In his Response, Petitioner maintains that Respondent's Summary Judgment Brief describes, in detail, his "repeated attempts to complete the administrative remedy process." ECF No. 18 at 2. Petitioner argues that Respondent concedes Petitioner appealed his grievance and only argues that Petitioner's appeal was untimely. *See id.* Further, Petitioner argues: "Based upon the untimeliness of the administrative appeal to the Central Office, it would have been futile to refile because he was time barred from presenting his issues on an administrative level." *Id.* In the remainder of Petitioner's response, he focuses on the merits of his habeas grounds and argues that this court should decide: "Can the BOP staff properly identify medication without performing a field test or submitting the medication to a laboratory for testing?" *Id.* at 3.

A federal prisoner challenging sentence computation and application of credits must exhaust the administrative remedies afforded him by BOP before filing a § 2241 petition in the United States District Court. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in 28 U.S.C. § 2241 matter); *McClung v. Shearin*, 90 Fed.Appx. 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."). This requirement of exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). The federal BOP has established administrative procedures for review of such issues raised by federal prisoners. *See* 28 C.F.R. §§ 542.10–542.16; *and see Anderson v. Miller,* 772 F.2d 375 (7th Cir. 1985), *cert. denied*, 475 U.S. 1021 (1986) (discussing BOP administrative procedures for inmates at length).

The BOP manages an Administrative Remedy Program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).  Generally, a federal prisoner exhausts administrative remedies by first attempting to resolve the matter informally with BOP staff. *See* 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, within 20 days of the incident at issue the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP–9)," 28 C.F.R. § 542.14(a). Concerning the initial filing form that needs submission, the BOP requires that:

> (1) The inmate shall obtain the appropriate form from CCC [Community Corrections Center] staff or institution staff (ordinarily, the correctional counselor).
> (2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.
> (3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½ " by 11") continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15(b)(3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.
> (4) The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM [Community Corrections Manager].

28 C.F.R. § 542.14(c). "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C .F.R. § 542.15(a). However, an inmate who wishes to challenge the decision of DHO shall submit the DHO appeal initially to the Regional Director for the region where the inmate is currently located on a BP–10 form. *See*

28 C.F.R. § 542.14(d)(2); 28 C.F.R. § 542.15(b)(1). Appeals to the Regional Director must be accompanied by a copy of the response the inmate received at the institutional level that he or she wishes to appeal. 28 C.F.R. § 542.15(b)(1). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). "An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal." 28 C.F.R. § 542.15(b)(2).

In support of his argument, Respondent submitted the affidavit of "A. Williams" as an attachment to the pending Motion. *See* ECF No. 11-3. Williams is a legal assistant with the South Carolina Consolidated Legal Center for the Federal BOP, and she attests that she has access to BOP records and official databases concerning inmate administrative remedies. *Id.* ¶¶ 1-2. Additionally, Williams avers that she is regularly involved in the processing of inmate administrative remedies and has investigated and reviewed responses to these requests at all three levels of review. *Id.* ¶ 2. In her affidavit, Williams describes the informal and formal inmate grievance process and explains that "[a]ll formal requests are logged into the national database and are given a unique identifying number." *Id.* ¶¶ 3-4.  In her affidavit, Williams outlines how Petitioner failed to exhaust his administrative remedies in compliance with the BOP's rules governing administrative remedies.

Initially, Petitioner filed Remedy #826623-R1 with the Southeast Regional Office (SERO) on June 26, 2015, seeking review of a DHO finding that he violated Inmate Discipline Codes 113: Possession of Drugs Not Prescribed for the Individual by Medical Staff. *Id.* ¶ 6. In a supplemental filing, Respondent attached the "Administrative Remedy Generalized Retrieval" of

Petitioner's initial filing of Remedy #826623-R1 and its July 1, 2015 denial. ECF Nos. 26-1; 26-2. Williams attests that on July 1, 2015, the SERO rejected Remedy #826623-R1 "noting that he must wait for the DHO's decision before appealing to the SERO" and indicating that "he may file an appeal to the SERO within twenty (20) days after he received the DHO's decision." ECF No. 11-3 ¶6.

After he filed his initial grievance, Petitioner filed Remedy #826623-R2 on July 24, 2015, with the SERO (BP-10), appealing the Code 113 violation from his DHO hearing on May 13, 2015. *Id.* ¶ 7; ECF No. 26-1. Concerning Remedy #826623-R2, Williams attests that Petitioner "claimed that he received the medication in his possession from Health Services and requested the Code 113 violation be changed to a Code 305 violation." *Id.* According to Williams' affidavit, "[o]n July 29, 2015, the SERO Regional Director denied Remedy #826623-R2, noting that the disciplinary procedures in Mr. Reid's DHO hearing were followed, the evidence supported the DHO's finding, and the sanctions were appropriate for the offense." *Id.* In a supplemental filing, Defendant attached Remedy #826623-R2 and the denial of it on July 29, 2015. ECF No. 26-2.

Williams attests that on December 30, 2015, Petitioner filed Remedy #826623-A1 (BP-11) with the BOP Central Office, attempting to appeal the SERO's response to his administrative remedy. ECF No. 11-3 ¶ 8. On or about January 20, 2016, the Central Office rejected Remedy #826623-A1, noting that Petitioner's appeal was untimely as Central Office appeals must be filed within thirty (30) days of the Regional Director's response, including mail time. *Id.* According to Williams, Petitioner's administrative remedy appeal was due to the Central Office on August 28, 2015. *Id.* Further, Williams explains that Petitioner's appeal was incomplete because:

> [Petitioner] also failed to provide a copy of the BP-10 Regional Administrative
> Remedy appeal and the response from the SERO Regional Director, making the

Remedy incomplete. The Central Office notified [Petitioner] that he could provide the required documentation, along with a memorandum from staff explaining his delay, and resubmit the appeal within fifteen (15) days of the date of the rejection notice.

*Id.*

Concerning Petitioner's final grievance attempt, Williams attests that on or about February 23, 2016, Petitioner filed Remedy #826623-A2 with the BOP Central Office, and on March 3, 2016, the Central Office rejected Remedy #826623-A2. *Id.* ¶ 9. Williams explains that though Petitioner satisfied the issue of untimeliness in Remedy #826623-A1, he failed to sign the new appeal, utilize Part A of the BP-11 form, and failed to provide a copy of the BP-10 Regional Administrative Remedy appeal and the response from the SERO Regional Director. *Id.* Williams attests that due to these inadequacies, Petitioner's Remedy was incomplete. *Id.* Additionally, Williams indicates:

[Petitioner] did not include only one letter size continuation page (8 ½" x 11") with his appeal. The Central Office notified him that he could resubmit the appeal within fifteen (15) days of the date of the rejection notice. However, [Petitioner] failed to resubmit his appeal to the Central Office within the time frame allowed. In addition, [Petitioner] did not provide any reasons or show any cause or prejudice that prevented him from exhausting the administrative remedy process in Remedy #826623.

*Id.*

Review of the present Petition reflects that Petitioner has failed to exhaust the BOP's administrative remedies properly either by submitting untimely grievances and/or appeals or by failing to include required documentation with the grievance. Courts routinely require such administrative exhaustion and dismiss unexhausted petitions. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (internal citations omitted) ("[T]he law of habeas, like administrative law, requires proper exhaustion, and we have described this feature of habeas law as follows: To . . . protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has

exhausted his state remedies, but also whether he has *properly* exhausted those remedies. . . .”);
*Strouse v. Wilson*, No. 3:12-CV-653, 2014 WL 843276, at *5 (E.D. Va. Mar. 4, 2014), *aff'd*, 575
F. App'x 115 (4th Cir. 2014) (where the district court dismissed the Petition because petitioner
failed to file a BP–10 with the DHO Report attached in the Mid–Atlantic Regional Office within
twenty (20) days of receiving the DHO Report); *Forbes v. Mitchell*, No. CA 1:10-1770-CMC-
SVH, 2011 WL 4054869, at *5 (D.S.C. July 22, 2011), *report and recommendation adopted*, No.
CA 1:10-1770-CMC-SVH, 2011 WL 4054867 (D.S.C. Sept. 12, 2011) (recommending finding
that Petitioner failed to properly exhaust his administrative remedies with respect to his denial-
of-witness claim prior to initiating the above action). Accordingly, the undersigned finds
Petitioner's challenge to his sentence calculation is procedurally barred from review and
recommends granting Respondent's Motion for Summary Judgment.

### 2.  Due Process Rights Violation

Should the district court determine that Petitioner exhausted his administrative remedies,
the undersigned will review what due process Petitioner was afforded. Here, Petitioner maintains
that the DHO hearing Report was not delivered to him on June 4, 2015, as indicated by
Respondent. ECF No. 1-1 at 3.  Thus, Petitioner asserts that he does not know the Hearing
Officer's findings and conclusions nor the reasons the sanctions were imposed. *Id.*

When a prisoner faces the possible loss of good-conduct credits in prison disciplinary
proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S.
539, 564 (1974). These include advance written notice of the charges against him, a hearing, the
right to call witnesses and present evidence when doing so is not inconsistent with institutional
safety and correctional concerns, and a written decision. *Id.* at 564–71. Furthermore, substantive

due process is satisfied if the disciplinary hearing decision was based upon "some evidence." S*uperintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Respondent argues that Petitioner was afforded his due process rights pursuant to the *Wolff* requirements. ECF No. 11 at 10-11. Specifically, Respondent maintains that the DHO report indicates that Petitioner received a copy of the report on June 4, 2015. *Id.* at 11. Nevertheless, Respondent argues that the report in question is attached as Exhibit 4 to his Motion for Summary Judgment and if he was not before, Petitioner has now been afforded the required due process. *Id.*

Here, Petitioner concedes he received advance written notice of the charges more than twenty-four hours before his May 13, 2015 disciplinary hearing, did not present witnesses, did not request staff representation, and admitted the charges against him. ECF Nos. 1-1 at 2. Though Petitioner maintains he did not receive the Report following the hearing, Exhibit 4, ECF No. 11-4 at 4, indicates that the Report was delivered to Petitioner at 8:30 a.m. on June 4, 2015. Therefore, in applying the *Wolff* criteria to this case, it appears that Petitioner received all the process due him in connection with his disciplinary hearing. Therefore, Petitioner was not deprived of any due process rights in connection with the charges against him. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment should be granted insofar as Petitioner claims violations of procedural due process in connection with his disciplinary hearing.

III.     Conclusion and Recommendation

Based upon the foregoing, the undersigned recommends that Respondent's Motion for

Summary Judgment, ECF No. 11, be GRANTED.

IT IS SO RECOMMENDED.


May 10, 2017                                    Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation.**